UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TIMOTHY WILLIAMS,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD MEDICAL SVC., et al.,<br><br>Defendants. | CAUSE NO.: 3:18-CV-143-JD-MGG |

<u>OPINION AND ORDER</u>

Timothy Williams, a prisoner without a lawyer, proceeds on Eighth Amendment claims against Dr. Thompson and Wexford Medical Services, alleging that he has received inadequate treatment for a wound on his lower right leg since May 2017. ECF 4. The defendants filed the instant motion for summary judgment, arguing that Dr. Thompson provided appropriate treatment for the wound and that Williams has not demonstrated a policy or practice that contributed to a constitutional violation in relation to the medical care for his wound. Williams responds that Dr. Thompson acted with deliberate indifference by continuing to pursue a course of treatment that had been proven ineffective.

Williams maintains that the instant motion is procedurally deficient because he did not receive the defendants' exhibits in support of the motion for summary judgment, including the medical records and the transcript of his deposition. Notably, Williams did not raise this issue in the three motions he filed to stay or extend his response deadline (ECF 77, ECF 79, ECF 81), and the Bates stamps on the medical

record exhibits attached to Williams' response brief strongly suggests that he did receive these exhibits.[1] Further, even if the defendants did not send these exhibits as attachments to the instant motion, this did not prejudice Williams because he had also received them during the discovery stage. ECF 53-65. Williams further maintains that Dr. Thompson's affidavit (ECF 72-3) is inadmissible because Dr. Thompson has no personal knowledge of Williams' medical history prior to April 2012 and no personal recollection of the details of Williams' medical history since April 2012. However, Dr. Thompson is qualified as a medical expert, and neither personal knowledge nor personal recollection is required to testify on matters within a witness' realm of expertise. *See* Fed. R. Evid. 702, 703. Additionally, witnesses are permitted to testify on matters of personal knowledge even if they must reference documents to refresh their recollections. Fed. R. Evid. 612. Therefore, the court finds no issues of admissibility with respect to the defendants' exhibits and will consider them in their entirety.

FACTS

In support of their motion for summary judgment, the defendants submitted the declaration of Dr. Thompson, Williams' medical records from November 2011 to April 2018, and the transcript of Williams' deposition testimony. On October 28, 1999, Williams sustained a gunshot wound to the right leg and groin area. ECF 72-2 at 4. He received substantial medical care following this injury, including a surgical procedure

---

[1] Specifically, the defendants used a different Bates stamp format for their summary judgment exhibits than they used on copies of the same documents produced during the discovery stage. *See e.g.*, ECF 53, ECF 72-5. The Bates stamp format used by the defendants at the summary judgment stage is displayed in the upper right corner of William's exhibits. *See* ECF 85-1.

2

to relieve swelling and pressure, also known as a fasciotomy. *Id.* at 4-6; ECF 74-3. As a complication of this injury, Williams suffers from chronic lymphedema in his right leg, which causes his fasciotomy scars to reopen periodically. ECF 74-3. Lymphedema is swelling caused by the accumulation of lymph fluid usually in the arms of legs due to damaged or removed lymph nodes. *Id.*

In 2011, Williams' wound reopened. ECF 74-2 at 6. He was sent to wound care specialists at the Terre Haute Regional Hospital on multiple occasions, and their recommended course of treatment consisted of daily dressing changes, antibiotic medication, elevation of the right leg, and a compression pump and stockings. ECF 74-5 at 1-27. On April 12, 2012, Williams transferred from the Wabash Valley Correctional Facility to the Indiana State Prison under the medical care of Dr. Thompson. *Id.* at 33-35. On May 3, 2012, Dr. Thompson consulted with a wound care specialist from ConvaTec, whose recommended course of treatment consisted of cleansing, dressing, and monitoring the wound on a regular basis. *Id.* at 42-45. He also prescribed antibiotic medication. *Id.* When the wound remained open, Dr. Thompson sent Williams to an orthopedic specialist at the Saint Anthony Memorial Hospital on multiple occasions, and the orthopedic specialist's recommended course of treatment consisted of compression socks and daily cleansing and dressing of the wound. *Id.* at 60-89; ECF 74-6 at 1-11.

From 2012 to 2015, the wound periodically reopened and healed. ECF 74-3. On June 28, 2013, Williams underwent a triple phase bone scan, which revealed no signs of bone infection. ECF 74-6 at 11. In August 2015, Dr. Thompson observed that the wound

had healed completely and discontinued regular wound care, though Williams was provided with medical supplies for self-care. *Id.* at 81. From August 2015 to May 2017, Williams experienced swelling, dry skin, and arthritic pain in the right leg, but the wound remained closed. ECF 74-3.

On May 14, 2017, Williams reported that his wound had reopened and requested an appointment with Dr. Thompson. *Id.* at 129. On May 17, Dr. Thompson observed a small opening and ordered wound care for Williams, which he usually received on a daily basis. ECF 74-7 at 3-5. On June 15, Dr. Thompson ordered a compression boot for Williams' right leg. *Id.* at 64-66. On September 15, Dr. Thompson noted that the wound had closed but prescribed Minerin cream and continued Williams in wound care to prevent dry skin. ECF 74-8 at 37-39. On October 26, Dr. Thompson discontinued wound care based on a nurse's report that the wound had healed. *Id.* at 60.

On December 6, 2017, Dr. Thompson observed a slight opening in the wound and restarted wound care for Williams. *Id.* at 64-66. On December 23, Dr. Thompson retired and provided no further treatment for Williams. ECF 74-3. However, since that time, medical staff have continued Dr. Thompson's course of treatment for the right leg wound, including medication and dressing and cleaning the wound. *Id.* On November 8, 2018, X-rays of the lower right leg revealed no signs of bone infection. ECF 74-10 at 125.

In an affidavit, Williams attests that, on February 8, 2019, he transferred to the infirmary unit at the Wabash Valley Correctional Center, where he continues to receive the same course of treatment for his right leg wound. ECF 85. At his deposition,

Williams testified that he repeatedly asked Dr. Thompson to see a wound specialist, and he denied that his wound had healed or closed at any point after May 2017. ECF 72-2 at 8-11.

## DISCUSSION

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).

Williams alleges that Dr. Thompson acted with deliberate indifference to his medical needs by providing inadequate treatment for his right leg wound since it reopened in May 2017. To prevail on this claim, Williams must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and

5

decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

Significantly, at his deposition, Williams disputed Dr. Thompson's assessment of his wound as healed in September 2017. Construing this fact in Williams' favor as required at the summary judgment stage, this suggests that Dr. Thompson acted with deliberate indifference by fabricating his assessment at the September 2017 appointment and when he discontinued Williams from regular wound care without examining him in October 2017. Additionally, Dr. Thompson offers no explanation as to why he denied Williams' numerous requests to see a wound care specialist. Therefore, the motion for summary judgment is denied with respect to Dr. Thompson.

Williams also asserts a claim against Wexford Medical Services for repeatedly denying him treatment as a cost-saving measure. A corporation "cannot be held liable under § 1983 on a *respondeat superior* theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Rather corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id.* A corporation can be held liable for "an express policy that, when enforced, causes a constitutional deprivation." *Id.* The policy must be the "moving force behind the deprivation of his constitutional rights." *Johnson v. Cook Cty.*, 526 F. App'x 692, 695 (7th Cir. 2013). Absent an unconstitutional policy, corporate liability may be established with a showing of "a widespread practice that, although not authorized by written law or express [corporate] policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995). Williams has provided no evidence that

Wexford Medical Services had a policy or practice of denying treatment as a cost-saving measure, and he has not demonstrated an underlying constitutional violation. To the contrary, Williams conceded at his deposition that the allegation that he was denied adequate treatment due to cost was merely speculation. ECF 72-2 at 8. Therefore, the motion for summary judgment is granted with respect to Wexford Medical Services.

This case has now survived the summary judgment stage and will likely be resolved through settlement or trial. Additionally, defense counsel recently filed notice that Dr. Thompson, the sole defendant remaining in this case, has died. ECF 86. Given these circumstances, the court finds that Williams would benefit from assistance of counsel and will attempt to recruit counsel on Williams' behalf.

For these reasons, the court:

(1) GRANTS IN PART the motion for summary judgment (ECF 71);

(2) DISMISSES Wexford Medical Services.

SO ORDERED on August 21, 2019

/s/ JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT